IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

ELLIOT DON RAY,

    Petitioner,

v.                                                                 Case No. 07-C-190

TIMOTHY LUNDQUIST[1],

    Respondent.

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

[1] Elliot D. Ray was recently transferred to Waupun Correctional Institution at which Jim Schwochert is the acting warden. Jim Schwochert, therefore, should be substituted as the named respondent in this action. See RULES GOVERNING SECTION 2254 CASES 2(a).

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| INTRODUCTION | 1 |
| STATEMENT OF PROPOSED MATERIAL FACTS | 2 |
|     A. Ray's Timely Delivery of His Petition To Prison Officials | 2 |
|     B. Ray's Diligent Efforts to Follow Up On His Petition | 3 |
|     C. Ray's Federal Habeas Petition and Affidavit Explaining the Timely Filing His State Petition | 3 |
|     D. Ray's Discovery of Additional Evidence Confirming His Timely Filing | 4 |
| STANDARD OF REVIEW | 6 |
| ARGUMENT | 7 |
| I. Under the Prisoner Mailbox Rule, Ray's Unrebutted Affidavit Is Sufficient to Establish That His Post-Conviction Motion Was Timely Filed. | 7 |
| II. Additional Evidence Confirms Ray's Timely Filing | 9 |
| CONCLUSION | 12 |

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970) ..................................................................................................6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................................6

*Dale v. Lappin,*
    376 F.3d 652 (7th Cir. 2004) ....................................................................................9

*Gallion v. Boatwright*,
    No. 07 C 0798, 2008 U.S. Dist. Lexis 55042 (E.D. Wis. July 18, 2008) ................7, 8

*Houston v. Lack*,
    487 U.S. 266 (1988) ..................................................................................................7

*Jones v. Bertrand*,
    171 F.3d 499 (7th Cir. 1999) ....................................................................................7

*Kaba v. Stepp*,
    458 F.3d 678 (7th Cir. 2006) ....................................................................................8

*Patel v. Allstate Ins. Co.*,
    105 F.3d 365 (7th Cir. 1997) ....................................................................................6

*Powers v. Dole,*
    782 F.2d 689 (7th Cir.1986) .....................................................................................6

*Ray v. Boatwright*,
    592 F.3d 793 (7th Cir. 2010) ....................................................................................8

*Tri-Gen Inc. v. International Union of Operating Engineers*,
    433 F.3d 1024 (7th Cir. 2006) ..................................................................................6

STATUTES AND RULES

28 U.S.C. § 2244(d)(2) ........................................................................................................7

Fed. R. App. P. 4(c)(1) .........................................................................................................7

Fed. R. Civ. P. 56(c) ............................................................................................................6

INTRODUCTION

As the Court is aware, the Seventh Circuit held that errors in the criminal trial of Petitioner Elliot Don Ray warrant habeas relief, but the Seventh Circuit remanded the case to this Court to decide a single remaining procedural question regarding whether Ray's habeas petition was timely filed. *See* Dkt. 34 at 11.

When the timeliness issue arose on appeal, the Seventh Circuit observed that there was "no evidence in the record to support the government's assertions" that Ray's petition was untimely. *Id*. Under the prisoner "mailbox rule," a petition by a pro se prisoner is deemed filed when it is given to prison officials. And "[t]he record currently reflects that Ray served a copy of his pro se postconviction petition to prison officials on April 27, 2004"—a date undisputedly within the applicable limitations period. *Id*.

Nevertheless, in an abundance of caution, the Seventh Circuit remanded the case to this Court "so that the government may have an opportunity to develop the record on this issue." *Id*. But eleven months after the Seventh Circuit's decision, the State has made no attempt to rebut any of the record evidence demonstrating Ray's timeliness. Furthermore, when this Court gave the State an unfettered choice about how to proceed, the State did not opt for discovery, and instead chose to file a perfunctory motion to dismiss that simply ignores the "mailbox rule" and the evidence of Ray's 2004 filing.[2]

To receive the benefit of the "mailbox rule," a prisoner need only provide an affidavit attesting to the date his filing was given to prison officials. Ray provided that affidavit to the Court with his original federal habeas petition. Although it was not necessary, Ray also provided additional documents to the Court confirming his affidavit. And more such documents are attached to this motion. This evidence is more than sufficient to support a finding of timeliness

---
[2] Petitioner has already filed a motion opposing the State's motion to dismiss.

as a matter of law.  The State, meanwhile, has done nothing to call any of this evidence into doubt.  And the State's inability to muster any contrary evidence confirms that there are now no genuine issues of material fact.  Accordingly, Ray is entitled to summary judgment on timeliness, and upon that finding, should promptly be granted habeas relief as directed by the Seventh Circuit.

## STATEMENT OF PROPOSED MATERIAL FACTS

1. Petitioner Elliot Don Ray was convicted in the Milwaukee County Circuit Court of first-degree reckless homicide on February 5, 2001 and sentenced on March 29, 2001 to forty years of imprisonment and twenty-two years of extended supervision (Dkt. 1 at 2).

2. Ray unsuccessfully appealed his conviction to the Wisconsin Court of Appeals and the court affirmed his conviction on January 28, 2003 (Dkt. 3 at 12-18).

3. Ray petitioned the Wisconsin Supreme Court for review but was denied on June 12, 2003.  The docket entry can be accessed at the Wisconsin Court of Appeals and Wisconsin Supreme Court website, http://wscca.wicourts.gov (last accessed Jan. 20, 2011).  Ray did not file a petition for certiorari with United States Supreme Court.

   A. **Ray's Timely Delivery of His Petition To Prison Officials**

4. On April 27, 2004, Ray placed his post conviction motion pursuant to Wis. Stat. § 974.06(4) with prepaid postage in the hands of Ms. Tamara Smith, a Diamondback Correctional Facility social worker, for filing and was provided with two receipts:  a "CCA Privileged Correspondence Receipt" which was signed by Ms. Smith, and "Certificate of Service by Mail," which was signed by Ray (Dkt. 3 at 7).  Ray Aff. ¶ 1-2, Exhibit A.

5. Ray, like other prisoners awaiting transfer, was confined to his unit, and all legal mail that he received or sent at Diamondback Correctional Facility was handled by the prison social workers.

B.  **Ray's Diligent Efforts to Follow Up On His Petition**

6. Three days later, on April 30, 2004, Ray was transferred to Green Bay Correctional Institution in Green Bay, Wisconsin. Ray Aff. ¶ 4.

7. Despite being transferred, Ray followed up with the Diamondback Correctional Facility to confirm that his petition had been properly mailed to the court. On June 1, 2004 and September 9, 2004, he wrote letters to Ms. Smith requesting verification that his petition had been sent (Dkt. 3 at 10-11). Ray Aff. ¶ 5, Exhibits B and C.

8. On May 26, 2005, Ray was transferred to Columbia Correctional Institution in Portage, Wisconsin. Ray Aff. ¶ 6.

9. Shortly thereafter, on June 15, 2005, Ray wrote a third letter to Ms. Smith requesting verification that his motion had been sent (Dkt. 3 at 9). Ray Aff. ¶ 7, Exhibit D.

10. On February 21, 2006, Ray was again transferred to the New Lisbon Correctional Institution, located in New Lisbon, Wisconsin. Ray Aff. ¶ 8.

11. On October 4, 2006, upon receiving no response from Ms. Smith, Ray sent a notarized letter to the clerk of the court, requesting information on the status of his post conviction motion. Ray was informed that there was no record of his post conviction motion being filed with the court (Dkt. 3 at 5). Ray Aff. ¶¶ 9-10, Exhibit E.

12. On October 13, 2006, Ray filed a supplemental pro se post conviction motion in the circuit court of Milwaukee County which was denied on the merits on October 16, 2006 (Seventh Circuit Dkt. 34 at SA 86).

C.  **Ray's Federal Habeas Petition and Affidavit Explaining the Timely Filing His State Petition**

13. On February 28, 2007, Ray filed a federal habeas petition with this Court (Dkt. 1), along with an affidavit explaining that he had previously provided his post conviction motion to

prison officials for mailing on April 27, 2004 and a copy of the Certificate of Service by Mail confirming the April 27, 2004 mailing (Dkt. 4). Ray Aff. ¶¶ 1, 2, 13, Exhibit F.

14. Shortly thereafter, on March 26, 2007, this Court granted Ray's petition to exhaust his claims in state court and stayed Ray's habeas petition (Dkt. 6).

15. On July 7, 2008, after Ray had exhausted his state claims, this Court lifted the stay and dismissed Ray's habeas petition (Dkt. 13).

16. Ray appealed the Court's decision (Dkt. 20).

17. On January 21, 2010, the United States Court of Appeals for the Seventh Circuit found that Ray's Sixth Amendment right to confrontation had been violated and remanded the case to this Court for determination on whether Ray's petition was timely filed (Dkt. 34).

D. **Ray's Discovery of Additional Evidence Confirming His Timely Filing**

18. On April 18, 2010, Ray submitted the original copy of a CCA Privileged Correspondence Receipt Form to New Lisbon Correctional Officer CoII Nedbal. The CCA Receipt form was attached to two other documents (1) Doc-1874 Photocopy Request Form requesting 2 copies of the CCA Receipt Form and (2) a Doc-184 Disbursement Request Form requesting a 30 cent disbursement, signed by CoII Nedbal. Ray Aff. ¶ 16, Exhibits G and H.

19. On April 21, 2010, Ray wrote to Ms. Martin, the New Lisbon Correctional Institute librarian, using a Doc-761 interview/information request form, asking about the whereabouts of his photocopies. Ms. Martin responded with a notation on his Doc-761 form indicating that the copies were made on April 19 and that they may have been lost in the mail. Ray Aff. ¶ 17, Exhibit I.

20. On April 23, 2010, Ray sent a Doc-761 interview/information request to Ms Emerson, a New Lisbon Correctional Institute staff member, asking about the whereabouts of his requested photocopies but received no response. Ray Aff. ¶ 17, Exhibit J.

4

21. On April 25, 2010, Ray sent another Doc-761 interview/information request to Ms. Emerson asking about the whereabouts of his photocopies but received no response. Ray Aff. ¶ 17, Exhibit K.

22. On the same day, Ray also sent a Doc-761 interview/information request to Ms. June Trepes, New Lisbon Correctional Institute Financial Specialist requesting information pertaining to his photocopies. In May 2010, Ray received a response from New Lisbon Correctional Institute Deputy Warden Tegels in the form of a notation on the Doc 761 form stating that Mr. Hines' letter of May 6, 2010 had addressed Ray's concerns. Ray Aff. ¶ 17, Exhibit L.

23. On April 27, 2010, Ray spoke with Mr. Hines, the New Lisbon Correctional Institute Education Director regarding his photocopies. Ray Aff. ¶ 17, Exhibit I.

24. On April 28, 2010, Ray sent out a Doc-761 interview/information request to Mr. Hines asking for a copy of the memo that Mr. Hines referred to in their conversation. Ray Aff. ¶ 17, Exhibit I.

25. On May 4, 2010, Ray wrote a letter to Deputy Warden Tegels, explaining all the steps that he had taken to retrieve his photocopies and the importance of the photocopied documents to his legal proceedings. Ray requested that his original CCA Privileged Correspondence Receipt form be returned to him as soon as possible. Ray Aff. ¶ 18, Exhibit M.

26. On May 6, 2010, Ray sent Mr. Hines another Doc-761 interview/information request form asking for a response to his inquiries about the missing photocopies. Ray Aff. ¶ 19, Exhibit N.

5

27. On May 6, 2010, Mr. Hines sent Ray a memorandum stating that his photocopies were missing and that he would continue to check to see if they will turn up. Ray Aff. ¶ 20, Exhibit O.

28. Ray has received no further information from Mr. Hines. Ray Aff. ¶ 21.

29. Ray has since been transferred from New Lisbon Correctional Facility to Waupun Correctional Institution in Waupun, Wisconsin.

## STANDARD OF REVIEW

Summary judgment is appropriate and the moving party is entitled to judgment as a matter of law if there are no genuine issues of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must consider the entire record when making a summary judgment determination. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986). Indeed, the burden on the moving party "may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Although the court must view the evidence in the light most favorable to the non-moving party, the non-moving party has the burden of demonstrating by specific factual allegations that there is a genuine issue of material fact. *Tri-Gen Inc. v. International Union of Operating Engineers*, 433 F.3d 1024, 1030 (7th Cir. 2006) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)). The non-moving party is required to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324.. And the non moving party loses the benefit of the doubt if the record does not contain competent evidence on both sides of a factual question. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 367 (7th Cir. 1997).

6

ARGUMENT

I. **Under the Prisoner Mailbox Rule, Ray's Unrebutted Affidavit Is Sufficient to Establish That His Post-Conviction Motion Was Timely Filed.**

The sole remaining issue in this case is whether Ray timely filed his state post-conviction motion within the one-year limitations period ending on September 9, 2004.[3] Because Ray gave his motion to prison authorities on April 27, 2004—long before the limitations period expired—the well-established prisoner "mailbox rule" compels a finding that Ray's motion was timely filed on that date, and that Ray's petition for a writ of habeas corpus was also timely filed.

Under the "mailbox rule" applicable to "prisoners filing pro se habeas petitions, and, for statute of limitations purposes, a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk." *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999). This is only fair, as a pro se prisoner must rely on prison authorities, "whom he cannot control or supervise and who may have every incentive to delay." *Houston v. Lack*, 487 U.S. 266, 271 (1988). Thus, the Seventh Circuit has long instructed that "in order for justice to be properly served, [prisoners'] papers should be considered filed when given to prison officials." *Jones*, 171 F.3d at 502. This Court, moreover, has explained that prisoners receive the benefit of the mailbox rule so long as they provide a declaration or affidavit attesting to the date they gave their filing to prison officials. *Gallion v. Boatwright*, No. 07 C 0798, 2008 U.S. Dist. Lexis 55042, at *11, *15 (E.D. Wis. July 18, 2008). (referring to Fed. R. App. P. 4(c)(1), which codified the "mailbox rule" for prisoner's notice of appeal).

---

[3] Ray's conviction was final after the expiration of the period for seeking direct review of his conviction. His direct appeal concluded on June 12, 2003 when the Wisconsin Supreme Court denied his petition for review. Ray had ninety days to file a petition for certiorari with the United States Supreme Court, which means that Ray had until September 9, 2004 to file his post conviction petition in state court. The one year period to file a petition for writ of habeas corpus is tolled if a post-conviction petition is properly filed in state court during the one year period of limitations. *See* 28 U.S.C. § 2244(d)(2).

Ray has amply satisfied those requirements here. His original affidavit, which he filed with this Court before counsel was appointed, attested to the fact that he delivered his state postconviction motion to prison officials on April 27, 2004—well before the statute of limitations expired. Statement of Material Facts ¶ 12. Ray has also submitted a second sworn affidavit to this Court, reiterating these facts. *See* Exhibit 1 – Ray Aff. The State, meanwhile, has done nothing to rebut Ray's sworn statements. This case thus bears close resemblance to *Gallion v. Boatwright*, where this Court held that a *pro se* prisoner's petition was timely filed when it was delivered to prison authorities, even though the district court never received the original petition. *Gallion, at \*14.* As here, the prisoner in *Gallion* was forced to file a duplicate petition over two years after he filed his first petition when he discovered that his original filing had been lost. *Id*. at \*13-14. Applying the "mailbox rule," this Court held that the petitioner's affidavit "met the requirements of the prisoner mailbox rule" and that the State had failed to present evidence "calling into question the petitioner's statements" and therefore the petitioner's "petition for a writ of habeas corpus" was "considered timely filed." *Id*. The same is true here.

Absent substantive rebuttal, Ray's affidavit requires a summary judgment finding that his motion was timely filed. And the State has not even attempted to challenge Ray's affidavit with any competent evidence. The State's only attempt to challenge the affidavit was to claim, in its brief to the Seventh Circuit, that Ray's statements are "self-serving" and not to be believed. Brief of Respondent-Appellee at 13, *Ray v. Boatwright*, 592 F.3d 793 (7th Cir. 2010) (No. 08-2825). But a party cannot defeat summary judgment simply by calling an affidavit "self-serving." The Seventh Circuit has repeatedly "warned against [the] practice" of "trying to discredit [a party's] affidavits as 'self-serving.'" *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). After all, "[m]ost affidavits are self-serving, as is most testimony, and this does not

8

permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." *Id*. It is perfectly permissible on summary judgment that "the record may include a so-called 'self-serving' affidavit provided that it is based on personal knowledge." *Id*.; *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (holding that detailed and specific affidavits based on personal knowledge are "competent evidence" for summary judgment purposes).

In this case, the State has not presented any evidence, or even suggested that it could present any evidence, to counter Ray's sworn affidavit. Ray is therefore entitled to summary judgment.

II. **Additional Evidence Confirms Ray's Timely Filing**

Although Ray's unrebutted affidavit is enough on its own to warrant summary judgment, ample documentary evidence confirms what Ray explained in his affidavit. Most of this evidence has been in the record for some time. And as with the affidavit, the State has done nothing to rebut it.

As for evidence already in the record, Ray provided the Court with a copy of a "Certification of Service by Mail," which he received from prison officials when he gave them his motion for filing. It was dated April 27, 2004. Statement of Material Facts ¶ 4. After giving his motion to prison officials in Oklahoma, Ray was transferred to three different prison facilities. During this time, he wrote three separate letters to prison officials in Oklahoma, attempting to confirm that his motion had been filed. All of those letters consistently refer to the fact that Ray delivered his motion to prison officials in April 2004. Statement of Material Facts ¶¶ 6-7. Finally, after numerous unanswered letters, Ray learned in October 2006 that his April 2004 motion had not been received by the Milwaukee County Circuit Court clerk, and he promptly had a duplicate motion delivered. Statement of Material Facts ¶¶ 10-11.

9

In addition to evidence already in the record, further investigation has revealed even more evidence confirming Ray's timely filing. When Ray delivered his motion to Ms. Smith, she gave him two receipts, only one of which (the "Certificate of Service by Mail") was originally found and entered into the record. After the Seventh Circuit issued its opinion, however, Ray searched his legal files to find additional documentation and discovered the second receipt, a CCA Privileged Correspondence Receipt ("CCA Receipt") signed by Ms. Smith.

In an effort to submit that evidence to the Court, Ray made arrangements for the original receipt to be copied. Ray Aff. ¶¶ 15-16. He was required to submit the document along with a photocopy request form, which had to clearly describe the documents to be copied. *See* Exhibit P. On April 18, 2010, Ray submitted his CCA Receipt along with the required forms to Corrections Officer Nedbal, requesting two copies of "a Correction Corporation of America privileged correspondence receipt form signed by CCA Social Worker T. Smith regarding me placing my 974.06 motion in her hands [on] April 27, 2004". Ray Aff. ¶16, Statement of Proposed Material Facts ¶ 18. Before signing the photocopy form, a prison official had to inspect and authenticate the document that was being submitted, which Corrections Officer Nedbal did before signing the form. *See* Exhibit P. After Ray and Corrections Officer Nedbal signed the form, Ray's CCA Receipt was sent to the prison library to be photocopied. *See* Exhibits H and O. But Ray never received the copies, nor was the original document ever returned to him. Ray sent interview/information requests to various staff members of the New Lisbon Correctional Facility in an effort to find his documents on April 21, 23, 25, and 28, 2010. Statement of Proposed Material Facts ¶¶ 19 - 28. Despite numerous attempts to locate his documents, the library director and the Warden both informed Ray that his original CCA Receipt

along with the copies had been lost by prison officials. Statement of Proposed Material Facts ¶¶ 22, 27.

Although the original CCA Receipt has been lost by prison officials, documents confirm both the receipt's existence and Ray's diligent attempt to have it copied. These latest developments also underscore the challenges faced by prisoners such as Ray, who had no choice but to depend on prison officials to get his court documents filed or copied. Although he has been diligent in his efforts to present this Court with additional evidence that he timely filed his post conviction motion, Ray's efforts were thwarted when prison officials lost the original CCA Receipt. Fortunately, the attached documents demonstrate the CCA Receipt was inspected and authenticated by at least one prison official, Corrections Officer Nedbal, before it was lost. All of this further confirms Ray's sworn statement that he delivered his post-conviction motion to prison officials on April 27, 2004.

Ray's affidavit, bolstered by all of the other evidence, leaves no justifiable doubt as to the timeliness of his filing. The State has not and cannot meet its burden of coming forth with any evidence that would create a genuine issue of material fact. Accordingly, Ray is entitled to summary judgment as a matter of law.

## CONCLUSION

For the forgoing reasons, Ray respectfully requests that this Court GRANT Elliot D. Ray's motion for summary judgment along with his petition for a writ of habeas corpus as directed by the Seventh Circuit.

Dated this 20th day of January, 2011.

Respectfully submitted,

JEETANDER T. DULANI

s/Jeetander T. Dulani

WINSTON & STRAWN LLP
1700 K St NW
Washington, D.C. 20006
(202) 262-5000

*Attorney for Petitioner*
*Elliot D. Ray*