# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ELLIOT DON RAY,

      Petitioner,

v.                                                                Case No. 07-C-190

JIM SCHWOCHERT,

      Respondent.[1]

## ORDER DENYING DISPOSITIVE MOTIONS

On February 28, 2007, Elliot Don Ray filed a petition pursuant to 28 U.S.C. § 2254, asserting that his current confinement violates the Constitution. Concluding that it plainly appeared from the petition and attached exhibits that Ray was not entitled to federal relief, this Court dismissed the petition pursuant to Rule 4 of the Rules Governing Section 2254 Petitions. Ray appealed, and the United States Court of Appeals for the Seventh Circuit reversed, finding that the state courts had unreasonably applied clearly established federal law in admitting the statements of co-actors at Ray's trial through the testimony of a police detective. *See Ray v. Boatwright*, 592 F.3d 793 (7th Cir. 2010). Given this court's summary dismissal of the case, however, Respondent had not had been able to challenge the timeliness of Ray's petition. The Seventh Circuit therefore

---

[1] At the time the case was initially remanded, Ray's custodian was Timothy Lundquist. Ray has recently been transferred to Waupun Correctional Institution at which Jim Schwochert is the acting warden. Jim Schwochert , therefore, is substituted as the named respondent in this action. *See* RULES GOVERNING SECTION 2254 CASES 2(a).

remanded the case to allow Respondent to develop the record on that issue with instructions to grant the petition if it was found to be timely unless the State elected to retry Ray within 120 days.

Following the State's unsuccessful petitions for rehearing before the Seventh Circuit *en banc* and for *certiorari* to the United States Supreme Court, the case is before the Court on Respondent's motion to dismiss the petition as untimely. Ray has also filed a motion for summary judgment in which he argues that the evidence establishes without dispute that his petition was timely. For the reasons set forth herein, both motions will be denied and the Court will conduct an evidentiary hearing on the issue.

## I. BACKGROUND

The Anti-terrorism and Effective Death Penalty Act (AEDPA) of 1996 created a statute of limitations for state prisoners seeking federal habeas corpus relief under 28 U.S.C. § 2254. A state prisoner seeking federal relief under 28 U.S.C. § 2255 must generally file his petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

Ray was sentenced on March 29, 2001, and judgment was entered several days later. He appealed his conviction to the Wisconsin Court of Appeals claiming, *inter alia*, that his Sixth Amendment confrontation rights were violated by the admission of statements of non-testifying co-actors. Relying on *Tennessee v. Street*, 471 U.S. 409 (1985), the Wisconsin Court of Appeals concluded that there was no confrontation violation because the statements had been offered so that the jury could understand Ray's responses, not for the truth of the matter asserted, and affirmed his conviction. *State v. Ray*, 2003 WI App. 42U, ¶¶ 4-6. It was that ruling that the United States Court

of Appeals found to be an unreasonable application of clearly established federal law more than seven years later when it reversed this Court's dismissal of his § 2254 petition. *Ray*, 592 F.3d at 796.

In any event, after the Wisconsin Court of appeals affirmed his conviction, Ray filed a petition for review with the Wisconsin Supreme Court. The Supreme Court denied his petition on June 12, 2003. Ninety days thereafter, on September 10, 2003, his judgment became final within the meaning of § 2244(d)(1)(A). *See Jones v. Hulick*, 449 F.3d 784, 787 (7th Cir. 2006) ("The time during which a petition for certiorari to the United States Supreme Court can be filed from a decision on direct review is not counted because a decision does not become final until the time for petitioning for certiorari has passed."). The one-year limitation period for a petition seeking relief under § 2254 would therefore have expired one year later on September 10, 2004, unless it was tolled. Ray's § 2254 petition, however, was not filed until February 28, 2007.

A properly filed motion for post-conviction relief in state court tolls AEDPA's one-year habeas statute of limitations, 28 U.S.C. § 2244(d)(2), and Ray did file such a motion pursuant to Wis. Stat. § 974.06. But Respondent contends that Ray did not file his § 974.06 motion with the Circuit Court for Milwaukee County until October 13, 2006, more than two years after his state judgment of conviction became final. By that time, the limitations period for a § 2254 petition had expired. The fact that he subsequently filed a Wis. Stat. § 974.06 motion for post conviction relief does not give rise to a second one-year limitation period. *See Teas v. Endicott*, 494 F.3d 580, 581 (7th Cir. 2007) ("Nothing in § 2244(d) implies that the time is reopened if the state court engages in multiple rounds of review that it calls "direct."). It is on the basis of these facts that Respondent argues Ray's petition is untimely and must be dismissed. (Dkt. 45 at 5-7.)

3

Ray argues in response, however, that under the "prison mailbox rule" he actually filed his § 976.04 motion for post conviction relief well within the one year limitation period. Under the prisoner mailbox rule, a *pro se* prisoner's cause of action is considered filed when the prisoner delivers the pleading to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988). The rule is based on the fact that unlike other litigants, *pro se* prisoners are unable to personally file or place their court documents in the mail and have no control over delays by prison officials. *Id.*, at 271-72. Federal courts have therefore adopted the rule that "a *pro se* petition for habeas relief is deemed filed for statute of limitations purposes when it is given to the proper prison officials and not when it is actually received by the district court clerk." *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999).

Ray claims that he placed his motion for state post-conviction motion relief, with postage prepaid affixed, in the hands of Ms. Tamara Smith, a social worker at the Diamondback Correctional Facility, on April 27, 2004. Diamondback was a private contract correctional facility located in Oklahoma where Ray was being housed at the time.[2] (Aff. of Elliot Don Ray, Dkt. 48-1, Br. in Supp. of Mot. for S.J., Ex. 1, ¶ 1.) After he handed her his motion, Ray states that Smith handed him in return two receipts: a "CCA Privileged Correspondence Receipt" form, which Smith signed, and a "Certificate of Service by Mail" form, which Ray signed. (Ray Aff. ¶ 2.) Ray was transferred to Green Bay Correctional Institution (GBCI) and returned to Wisconsin three days later on April 30, 2004. (Ray Aff., ¶ 4.)

---

[2] Diamondback was operated by Corrections Corporation of America. Respondent notes that Diamondback shut down its facility in May 2010. Efforts to obtain records from that facility have so far been unsuccessful. (Resp.'s Reply Br. at 3, n.3.)

Over the next fourteen months, Ray claims he sent three follow-up letters to Ms. Smith asking her to confirm that she had deposited his motion in the mail. He wrote to Smith from GBCI on June 1 and again on September 9, 2004, and from Columbia Correctional Institution on June 15, 2005. Ray states that Ms. Smith failed to respond to any of his letters, and he finally wrote to the Clerk of the Circuit Court for Milwaukee County on October 4, 2006, from New Lisbon Correctional Institution (NLCI) requesting information on the status of his motion for post conviction relief. (Ray Aff. ¶¶ 5-9, Exs. A-E.) His letter, bearing a crossed out date stamp indicating the letter was received by the Milwaukee County Clerk of Court on October 6, 2006, was returned with a notation that read, "Our records do not show any motion filed in 2004." (Ray Aff., Ex. E.) It was at that point, Ray contends, that he realized his § 974.06 motion for post conviction relief had not been filed. He filed a new motion for post conviction relief on October 13, 2006, which was denied on October 16, 2006.[3] (Ray Aff. ¶ 12.) He again appealed to the Wisconsin Court of Appeals, and while his appeal was still pending, filed his petition for federal relief under § 2254.

Based on this version of the facts, Ray argues that his § 2254 petition was timely. Although his state motion for post conviction relief was not actually filed until more than two years after his judgment of conviction became final, Ray contends that it must be deemed filed as of April 27, 2004, when he placed it in Ms. Smith's hands for mailing to the Clerk of Court for Milwaukee County. That motion remained pending, and thus tolled the running of the one-year limitation period for filing a § 2254 petition for federal habeas relief, until ninety days after the Wisconsin

---

[3] Ray's § 974.06 motion does not appear in the record. Respondent does not dispute that it was "properly filed" as required by 28 U.S.C. § 2244(d)(2).

5

Supreme Court denied his petition for review of the Wisconsin Court of Appeals decision denying it. By that time, Ray had already filed his § 2254 petition, bringing it well within the one-year limitation period.

Respondent offers two arguments in reply. First, Respondent argues that Ray has not shown that he actually handed his motion for state post conviction relief to prison officials within the one-year period of limitations. Although Ray has submitted an affidavit and a number of documents in support of his claim, Respondent argues that his self-serving statements and questionable documents do not establish that he asked Ms. Smith to mail his motion for post conviction relief to the Circuit Court for Milwaukee County before the limitation period expired. Second, Respondent argues that the mailbox rule is a federal rule that applies only to federal filings; it does not apply to Ray's motion for post conviction relief in state court. Because the mailbox rule does not apply to Ray's motion for state post conviction relief, Respondent contends that Ray's claim that he handed his motion to Ms. Smith for mailing on April 27, 2004, is irrelevant. Even if he did hand his motion to Ms. Smith on that date, that would not constitute filing it under state law and thus the one-year limitation period would not have been tolled. Respondent contends that the one-year period therefore expired on September 10, 2004, and since Ray did not file his § 2254 petition on or before that day, it is barred. The Court will address Respondent's second argument first.

## II. ANALYSIS

**A. Application of the Prisoner Mailbox Rule to State Court Filings.**

Two cases Ray cites in support of the mailbox rule, *Houston v. Lack* and *Jones v. Bertrand*, involved application of the rule to federal filings. In *Houston*, the Court held that, for purposes of

federal appeals, a notice of appeal is deemed timely if it is delivered to prison authorities within the time allowed for appeal. 487 U.S. at 270. In *Jones*, the Court held that a *pro se* prisoner's federal habeas petition is considered timely when it is given to prison officials for mailing within the one-year limitation. 171 F.3d at 502. Respondent notes that neither the Supreme Court nor the Seventh Circuit has expressly held that the rule applies to state court filings and urges this Court to hold that it does not.

There is a split in the circuits over whether the mailbox rule applies to state filings in computing AEDPA's statute of limitations. Those courts that have addressed the issue have either applied the prison mailbox rule to state court filings, or they have interpreted § 2444(d)(2)'s requirement that the state post conviction motion be "properly filed" as synonymous with "filed under state law" and then looked to state law to decide whether it applies. Both the Second and Ninth Circuits have held that *Houston*'s mailbox rule applies to state habeas petitions as well as federal filings for purposes of deciding AEDPA's statute of limitations regardless of whether state law recognizes the rule. *See Fernandez v. Artuz*, 402 F.3d 111, 115 (2nd Cir. 2005) ("New York's rejection of the mailbox rule does not preclude its application by a federal court in tolling a federal statute of limitations."); *Anthony v. Cambra*, 236 F.3d 568, 575 (9th Cir. 2000) ("[T]he mailbox rule applies with equal force to the filing of state as well as federal petitions, because at both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court.") (internal quotes omitted). These holdings are consistent with the sound principle that federal law should govern the interpretation and application of a federal statute of limitations.

7

The Fifth and Tenth Circuits, on the other hand, look to the law of the state in which the filing is made to decide whether the mailbox rule applies. *See Causey v. Cain*, 450 F.3d 601, 605 (5th Cir.2006) ("[S]tate courts have the right to interpret 'state rules of filing' and are not bound by Houston's construction of federal filing rules."); *Adams v. LeMaster*, 223 F.3d 1177, 1181 (10th Cir. 2000) ("Based on the plain language of § 2244(d)(2), and in the interest of comity and due deference, we too hold state law must determine when a state habeas petition is considered filed."). Thus, in *Stoot v. Cain,* 570 F.3d 669, 671-72 (5th Cir. 2009), the court held that because Louisiana would have considered the pleading filed on the date the prisoner submitted the pleading to prison officials, a federal court would also consider it filed on that date. *Howland v. Quarterman*, 507 F.3d 840, 844-45 (5th Cir. 2007), by contrast, held that because Texas did not have the mailbox rule for state habeas petitions at the time, the federal court would not consider a pleading filed until it reached the court. *Adams* reached the same result as *Howland*, based on New Mexico law. 223 F.3d at 1181-82. Respondent urges the Court to adopt the same approach as the Fifth and Tenth Circuits. And since Wisconsin courts have not adopted the mailbox rule for § 974.06 motions for post conviction relief, Respondent argues, neither should this Court.

This Court finds the approach taken by the Second and Ninth Circuits more persuasive. Applying federal law to determine whether a filing deadline imposed by federal law is met does not interfere with a state's interpretation of its own law or fail to show proper deference. *See Fernandez v. Artuz*, 402 F.3d at 115, n.3 ("Application of the rule evinces no disrespect for the competence of state courts, their procedures, or the stability of state verdicts."). "Applying the mailbox rule merely grants the full statute of limitations for *pro se* prisoners attempting to reach the courts." *Id.* But regardless of which approach is taken, the Court is satisfied that the timeliness of Ray's claim must

8

be analyzed under the mailbox rule. For even though they have not directly applied the mailbox rule to § 974.06 motions, Wisconsin courts, no less than the federal courts, have adopted the principles underlying the rule.

It is hardly surprising that Wisconsin courts have not expressly adopted the mailbox rule for § 974.06 post conviction motions. Motions for post conviction relief under § 974.06 in Wisconsin have no filing deadline, and thus there is no reason to adopt a rule that operates to excuse a late filing where the litigant is not at fault. On the other hand, Wisconsin courts have adopted the mailbox rule for state filings that do have a deadline. In *Nichols v. Litscher*, 2001 WI 119, ¶ 1, 247 Wis. 2d 1013, 635 N.W.2d 292, for example, the Wisconsin Supreme Court, adopting the rationale of *Houston v. Lack*, held that "that the 30-day deadline for receipt of a petition for review is tolled on the date that a pro se prisoner delivers a correctly addressed petition to the proper prison authorities for mailing." And in *Shimkus v. Sondalle*, 2000 WI App 238, 239 Wis.2d 327, 620 N.W.2d 409, the Wisconsin Court of Appeals applied *Houston* in holding that when a prisoner seeking review of a disciplinary proceeding deposits a state certiorari petition in a prison mail receptacle, the 45-day time limit to file a certiorari action must be deemed tolled. The fact that Wisconsin courts have not adopted the mailbox rule where there is no need to do so is not an argument for this Court not doing so. This is especially true where the Wisconsin courts have shown a clear willingness to adopt such a rule when necessary to avoid a forfeiture that occurs through no fault of the *pro se* litigant.

The same considerations that led to the mailbox rule in *Houston v. Lack* apply here. As a *pro se* prisoner, Ray was powerless and unable to control the time of delivery of documents to the

court. 487 U.S. at 270-72. And even though it has not addressed this specific issue, the Seventh Circuit's reasoning in *Jones* clearly supports the extension of the rule here:

> The rulings extending the mailbox rule are consistent with the notion that prisoners filing pro se do not have the same access to the court system as other litigants, and, in order for justice to be properly served, their papers should be considered filed when given to prison officials. We join the overwhelming authority that the *Houston* mailbox rule should be extended to prisoners filing pro se habeas petitions, and, for statute of limitations purposes, a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk.

171 F.3d at 502.

The Court therefore concludes that the mailbox rule does apply for purposes of deciding whether a prisoner's § 2254 petition for habeas corpus relief is barred by AEDPA's statute of limitations and turns to the question of whether, applying that rule here, Ray's § 2254 petition was timely.

**B. Was Ray's Filing Timely Under the Mailbox Rule?**

Having concluded that as a general matter the prisoner mailbox rule applies to Wis. Stat. § 974.06 motions for post conviction relief, the Court must now determine whether Ray is entitled to the benefit of that rule. The answer to that question depends upon whether Ray is telling the truth about having handed his § 974.06 motion to Ms. Smith with prepaid postage on April 27, 2004, and requested that she mail it to the Circuit Court for Milwaukee County. If Ray did deliver his motion to Ms. Smith for mailing on that date, then his § 974.06 motion tolled the one-year limitation period and his § 2254 petition is timely. If he did not, then the limitation period expired and his § 2254 petition must be dismissed.

Before addressing the arguments the parties offer in support of their respective motions, it will be helpful to note which party bears the burden of proof on the issue. Since the period of

limitations is an affirmative defense, Respondent would normally carry the burden of proof on whether it bars Ray's petition. *Gildon v. Bowen,* 384 F.3d 883, 886 (7th Cir. 2004). The prisoner mailbox rule, however, is an exception to the normal statute of limitations, and thus Ray bears the burden of proving that it applies here. *See Knox v. Cook County Sheriff's Police Dept.*, 866 F.2d 905, 907 (7th Cir. 1988) ("While the statute of limitations is an affirmative defense, the burden of establishing an exception thereto is on plaintiff."). Otherwise, Respondent would be required to prove a negative: that Ray did not deliver his motion to prison officials for mailing within the limitations period.

Ray has clearly offered sufficient evidence in support of his claim that he delivered his § 974.06 motion to prison authorities within the one-year limitation period to withstand Respondent's motion to dismiss. As noted above, Ray filed a sworn affidavit in which he recounts that he handed his motion with prepaid postage to Ms. Smith, a social worker at Diamondback Correctional Facility, on April 27, 2004, and requested that she mail it to the Clerk of the Circuit Court for Milwaukee County. (Ray Aff., Ex. 1, ¶ 1.) Attached to his affidavit are copies of the "Certificate Of Service By Mail" that he claims Ms. Smith provided him at the time, the three letters he claims he sent Ms. Smith over the following fourteen months asking her to confirm that his motion had been mailed as he requested, and his October 4, 2006, letter to the Clerk of Court for Milwaukee County inquiring about the status of his motion. (*Id.*, Ex. A, B, C, D, and E.)

In addition, Ray states in his affidavit that after the Seventh Circuit remanded the case to this Court to determine whether his § 2254 petition was timely, he attempted to locate additional documentation confirming his effort to mail his § 974.06 motion on April 27, 2004. While doing so, Ray claims he discovered the Privileged Correspondence Receipt form that Ms. Smith had

11

signed and given to him when he handed her his motion. (Ray Aff. ¶ 15.) On April 18, 2010, Ray states that he gave his Privileged Correspondence Receipt form to Correctional Officer (CO) Nedbal at the NLCI for photocopying. He also submitted a Photocopy Request Form requesting two copies of the Privileged Correspondence Receipt form, as well as a Disbursement Request form authorizing a 30-cent disbursement which was signed by CO Nedbal. (Ray Aff., ¶ 16.) Ray claims, however, that he did not receive his requested copies or his original Privileged Correspondence Receipt back from CO Nedbal. He immediately sent interview/information requests to various staff members at NLCI and even wrote the warden asking about the whereabouts of his copies and his original Receipt. (Ray Aff. ¶¶ 17-18, Exs. I, J, K, L, and M.) On May 6, 2010, NLCI Education Director David Hines wrote a memorandum to Ray in which he explained that according to NLCI records, the copies he requested were made on April 19, 2010, and returned to the library to be sent to Ray on B-Unit through the institutional mail system. Hines assured Ray he had followed up with the librarian and the library officer who recalled placing his copies in the "Institution Mailbag" for return to Ray. (Ray Aff., Ex. O.) Although Hines stated he had followed every lead he could think of to determine the whereabouts of Ray's documents, he would continue his efforts to locate them. (*Id.*)

This evidence is more than sufficient to support a finding that Ray did in fact hand his motion to a prison official for mailing on April 27, 2004, and thereby defeat Respondent's motion to dismiss. Respondent's motion must therefore be denied. The question Ray's motion for summary judgment presents, however, is whether the evidence Ray has presented is sufficient to warrant summary judgment in his favor. Summary judgment can be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). In response to Ray's motion, Respondent questions the credibility of Ray's statements presented in his affidavit and the reliability of his documents, and suggests there remains a factual dispute over whether Ray delivered his § 974.06 motion to prison officials for mailing prior to September 10, 2004. In the alternative, Respondent requests that the Court set a further briefing schedule since a motion for summary judgment was not contemplated by the briefing schedule the Court set on the issue.

Ray argues in reply (or sur-reply) that he has presented more than enough evidence to demonstrate that under the mailbox rule his state post conviction motion was timely and therefore tolled the statute of limitations for his § 2254 petition. He notes that Respondent has offered no evidence that he did not properly deliver his motion to prison officials as he claims, but instead simply dismisses his affidavit as self-serving and challenges his documentation as unreliable. This, Ray argues, "is plainly insufficient." (Pet.'s Sur-Reply to Resp.'s Br. at 8.)

In the context of this case, however, it is not. As noted above, Ray carries the burden of proving that the mailbox rule exception to the statute of limitations defense applies, and while his evidence is sufficient to support a finding that it does, it is not so overwhelming as to compel such a finding. At its core, the issue is one of Ray's credibility, and summary judgment is not an appropriate tool for resolving credibility issues. *See* Fed. R. Civ. P. 56(e), Advisory Committee Note to 1963 Amendment ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") (citing *Anderson v. Liberty*

13

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)). This is particularly true when the record suggests reasons to question the credibility of the witness whose testimony provides the factual basis upon which summary judgment is sought. That is the case here.

As Respondent notes, there is no independent corroboration of Ray's claim that he delivered his motion to Ms. Smith for mailing on April 27, 2004. The "Certificate Of Service By Mail" which Ray claims Ms. Smith gave him raises more questions than it answers. The certificate bears no signatures, other than Ray's, and appears on plain white paper with no heading or other indication that it is an official prison form. In both form and content it looks more like the product of a prisoner than a prison administration.

The various letters attached to Ray's affidavit offer little more. Although Ray claims they are copies of actual letters he sent to Ms. Smith on the dates indicated, he offers nothing but his own word to support his claim. The letters were not retrieved from Ray's prison file, but are apparently photocopies he claims he retained. There is no independent date stamp, nor do they contain the address to which they were allegedly sent. Indeed, Ray's own version of the events, which he claims the letters document, raises a number of questions. For example, why did he continue to write Ms. Smith over a fourteen month period asking her to confirm that she placed his motion in the mail when she never responded to him? When she failed to respond to his initial inquiry in his letter of June 1, 2004, why didn't he immediately ask the Clerk of Court for Milwaukee County about the status of his motion instead of waiting more than two years to do so? "A failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent." *Stoot v. Cain*, 570 F.3d at 672. Inquiry that is obviously ineffective also raises questions.

14

Questions also surround the one piece of documentary evidence, now missing, that Ray claims memorializes the fact that he delivered to her his § 974.06 motion for post conviction relief on April 27, 2004, and that bears the signature of Ms. Smith – the "CCA Privileged Correspondence Receipt." Ray did not include that document with the other documents he initially submitted with his original § 2254 application on February 28, 2007 (Dkt. 3), but claims he discovered it among his papers after the Court of Appeals found in his favor on his confrontation clause claim and remanded the case for a determination whether his petition was timely. (Ray Aff. ¶ 14-15.) Ray claims that NLCI officials lost this document after he delivered it to them for copying.

Although Ray has offered a number of documents that support his claim that he gave the Privileged Correspondence Receipt to a NLCI officer for copying and authorized a disbursement from his account to pay for it, the record does not disclose the type of information necessary to assess such evidence. For example, do Correctional Officers who are asked to copy documents for inmates check the document the inmate asks them to photocopy to make sure that it is the same as the document the inmate described in his Photocopy Request and Disbursement forms? If not, it is possible that the document Ray claims he gave CO Nedbal for copying was not what he claims it was and what he described in his request forms. According to NLCI Education Director Hines, the prison records show the copies were made and placed in the institution mailbag for delivery to Ray. (Ray Aff., Ex. O.) What records does the institution have, and how are they kept? How frequently is mail lost? The answer to these and similar questions, as well as the opportunity to observe Ray's demeanor, are necessary to allow the Court to evaluate Ray's credibility and determine whether he is telling the truth about having delivered his motion to Ms. Smith as he claims.

Of course, in raising these questions, the Court is not suggesting that Ray is not telling the truth. Indeed, to find that Ray is not telling the truth, one would have to conclude not only that Ray conceived of an exceptionally clever way to avoid AEDPA's statute of limitations, but that since October of 2006, if not earlier, he has been carefully manufacturing evidence to help him carry it out, even going so far as to induce NLCI officials to unwittingly provide independent corroboration. At first glance, it might appear highly unlikely that a prison inmate would have the intelligence and ingenuity to concoct such a story and manufacture the evidence to support it. At the same time, however, it is clear that models do exist, even in the same prison where Ray was housed, which can serve as a blueprint for a bright inmate to use to design his own plan for avoiding AEDPA's procedural obstacles. *See Gallion v. Boatwright*, No. 07-C-0798, 2008 WL 2801916 (E.D. Wis. July 18, 2008) (finding habeas petition filed by NLCI inmate timely under mailbox rule based on inmate's affidavit corroborated by signed Disbursement Request form). The plain fact is that the Court does not know and, on this record, is unable to determine whether Ray's version is true. It is for this reason that an evidentiary hearing is required.

Accordingly, Respondent's motion to dismiss and Ray's motion for summary judgment are denied. The Clerk is directed to set this matter on the Court's calendar for a telephone conference to address further scheduling.

**SO ORDERED** this 22nd day of April, 2011.

        s/ William C. Griesbach
        William C. Griesbach
        United States District Judge