UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ELLIOT DON RAY,

        Petitioner,

v.                                       Case No. 07-C-190

WILLIAM POLLARD,

        Respondent.[1]

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
DISMISSING MOTION FOR RELIEF UNDER 28 U.S.C. § 2254**

Petitioner Elliot Don Ray is currently serving a state sentence for First Degree Reckless Homicide, two counts of Reckless Endangerment and Possession of a Firearm by a Felon. On February 28, 2007, Ray filed a petition for relief under 28 U.S.C. § 2254 in this Court. The case has a lengthy procedural history, including summary dismissal by this Court, reversal by the Court of Appeals, and an order for remand, all of which is set forth in the Court's April 22, 2011 Order and Decision Denying Dispositive Motions (Doc. 56) and will not be repeated here. The sole issue remaining is whether Ray's petition was timely under AEDPA's one-year limitation period. 28 U.S.C. § 2244(d). In its April 22 Decision, the Court concluded that an evidentiary hearing was needed to determine whether on April 27, 2004, Ray handed a motion for state post-conviction relief to a social worker at the private correctional facility where he was serving his sentence for mailing

---

[1]William Pollard has replaced Jim Schwochert as the Warden at Waupun Correctional Institution where Ray is presently serving his sentence.

to the Circuit Court for Milwaukee County. That hearing was held on July 28, 2011. What follows are the Court's findings of fact and conclusions of law.[2]

The Anti-terrorism and Effective Death Penalty Act (AEDPA) requires that applications for habeas corpus under §2254 be filed within one year of the date on which the state judgment becomes final. 28 U.S.C. § 2244(d)(1). Ray's state conviction became final on or about September 10, 2003, more than three-and-a-half years before he filed his § 2254 petition in this Court. Ray contends, however, that his petition is nevertheless timely because the one-year limitation period was tolled during the time his motion for state post-conviction relief under section 974.06 of the Wisconsin Statutes was pending before the state courts. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Ray's motion for state post-conviction relief was filed on October 13, 2006, however, more than two years after his conviction became final, and the belated filing of a § 974.06 motion for post conviction relief does not reopen a limitation period that has already expired. *See Teas v. Endicott*, 494 F.3d 580, 581 (7th Cir. 2007) ("Nothing in § 2244(d) implies that the time is reopened if the state court engages in multiple rounds of review that it calls "direct."). But Ray contends that he handed his § 974.06 motion to a social worker at the private correctional facility where he was serving his sentence on April 27, 2004, well within the one-year period. He claims that he prepared and filed a second motion on October 13, 2006, only after he

---

[2]The Court withheld ruling on the admission of exhibits offered during the hearing. Ray's Exhibits 0 through 21 are received with the exception of Exhibits 17 and 18, both of which are affidavits by prisoners who did not testify. The statements in the affidavits are offered for the truth of the matter asserted and, absent an opportunity for cross-examination, the Court cannot assess the credibility of the declarant. Respondent's Exhibits 1000 and 1001 are also received.

2

learned that the original had not been mailed to the state court as he had requested, and argues that under the mailbox rule his § 974.06 motion must be deemed filed at the time he gave the first motion to a prison official for mailing. *See Houston v. Lack*, 487 U.S. 266 , 276 (1988) (holding that notice of appeal is deemed filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk). That motion therefore remained pending from April 27, 2004, he argues, and thus tolled the running of the one-year limitation period until ninety days after the Wisconsin Supreme Court denied his petition for review. Since by that time Ray had filed his § 2254 petition, he contends that it must be found timely.

Before turning to the facts of the case, it should be noted that this case differs from *Houston* and most of the cases in which the mailbox rule is invoked where the required filing is actually received by the court, but some time after the statutory deadline. In *Houston*, for example, the inmate's notice of appeal from the denial of his habeas petition was received by the court one day after the thirty-day time limit for an appeal, even though he placed it in the prison mail three days before the deadline. The issue presented was whether the notice of appeal actually received by the trial court should be deemed filed when placed in the mail. Here, by contrast, the state court never received Ray's initial motion for post-conviction relief; he claims that he prepared and filed a new motion after he learned from the clerk that his initial motion had never been received. It is not clear how the rule applies in a case like this.

As Judge Stadtmueller has recently noted, two circuits that have addressed the issue have taken different approaches in deciding how the mailbox rule applies where the filing was never received. *Johnson v. United States*, Case No. 10-CV-341, 2010 WL 2490694, *2 (E.D. Wis. June 17, 2010). In *Huizar v. Carey*, the Ninth Circuit held that a prisoner who delivers a document for

3

mailing that is never received by the court "gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time." 273 F.3d 1220, 1223 (9th Cir. 2001). The Eleventh Circuit, on the other hand, held in *Allen v. Culliver* that if the district court makes a finding of fact that the prisoner timely mailed the document, then the prisoner is entitled to the "prison mail box rule," even if the document was never received, and regardless of the prisoner's diligence in following up. 471 F.3d 1196, 1198 (11th Cir. 2006). The Eleventh Circuit rejected the Ninth Circuit's "diligence" requirement, reasoning that if a document is deemed "filed" under *Houston* when delivered to prison authorities, then a lack of diligence on the part of the prisoner cannot operate to "un-file" the document. *Id.* However, even under the Eleventh Circuit's approach the inmate's diligence remains relevant because "[t]he district court may take into account any and all relevant circumstances, including any lack of diligence on the part of [the inmate] in following up in a manner that would be expected of a reasonable person in his circumstances, in deciding whether the notice was delivered to the prison authorities." *Id.* The Seventh Circuit has yet to address the issue, but regardless of which approach is applied here, the Court finds on the evidence presented that Ray's petition was not filed within the one-year period allowed under § 2244(d)(1).

At that hearing, Ray testified, consistent with his affidavit, that he handed his state post-conviction motion to Ms. Tamara Smith, a social worker with Diamondback Correctional Facility, with postage prepaid and addressed to the Milwaukee County Circuit Court on April 27, 2004. Diamondback was a private correctional facility located in Oklahoma and operated by the Corrections Corporation of America ("CCA"), which at that time apparently contracted with the Wisconsin Department of Corrections to house Wisconsin prisoners. Wisconsin no longer contracts

4

with CCA to house its prisoners, however, and counsel for Respondent stated that her repeated efforts to obtain information from CCA about Diamondback, which has since been shut down, went largely unheeded.

Although the CCA Corporate And Facility Policy for Diamondback that counsel was able to obtain states that "all outgoing legal mail is logged in at the mailroom when it is received" (Ex. 1001, ¶ 16-1.5(C)(1)(f)), Ray testified that he was being held in administrative confinement in preparation for his transfer back to Wisconsin at the time, and therefore did not have access to the normal mail channel. He instead handed his motion to Ms. Smith for mailing. Ms. Smith took Ray into an office and handed Ray a "Certificate Of Service By Mail," which he filled out and signed, while she completed and signed a "CCA Privileged Correspondence Receipt." Smith then gave Ray copies of both forms. Three days later, Ray was returned to Wisconsin and placed at Green Bay Correctional Institution.

Ray testified that on June 1, 2004, approximately one month after his return to Wisconsin, he wrote to Ms. Smith inquiring about his motion. Ray's letter to Smith, a copy of which he retained, reads:

> Dear Mrs. Smith,
>
> On April 27, 2004 I came to your office concerning me mailing out my "Postconviction Relief Pursuant to 974.06{4} motion. while in your office I placed said motion in your hands and you filled out a "Certificate Of Service By Mail {attached} and gave me a copy and placed a copy in your file. Later that month I was transferred back to the wisconsin prison system. I haven't heard anything from the Milwaukee County Clerk regarding said motion had been received and filed. can you please make sure said motion was mailed out? thank you.

(Ex. 2.) Ray testified that he received no response to his letter and sent a second, almost identical letter to Smith, a copy of which he also retained, on September 9, 2004. (Ex. 3.) Ray testified he

5

received no response and wrote a third letter to Smith on June 15, 2005, again asking her to "inform me what happen to said motion once I placed it in your hands." (Ex. 4.) Again he received no response.

Finally, on October 4, 2006, Ray testified that he sent a notarized letter to the Clerk of the Circuit Court for Milwaukee County and asked about the "current status of my postconviction relief pursuant to 974.06[4] Wis. stats. that I mailed out in April of 2004." (Ex. 5.) The Clerk filed Ray's letter on October 6, 2006, and returned a copy to him with the notation, "Our records do not show any motion filed in 2004." (*Id.*) Upon learning that his original motion had not been filed, Ray testified that he quickly prepared a duplicate motion which he filed on October 13, 2006, and which was denied by the court on October 16, 2006. Ray appealed the denial of his motion to the Wisconsin Court of Appeals, and while his appeal was still pending, he filed his petition for § 2254 relief with this court.

To corroborate his testimony that he had handed his motion for state post-conviction relief to Ms. Smith on April 27, 2004, Ray offered into evidence the Certificate of Service by Mail, the copies of the three letters he sent to Ms. Smith, and the copy of the letter he sent to the Clerk of Court for Milwaukee County. (Exs. 1-5.) In addition to these documents, Ray testified that after the Seventh Circuit reversed this Court's denial of his petition and remanded the case to determine whether his petition was timely, he also located the CCA "Privileged Correspondence Receipt" Ms. Smith had given him when he handed her his motion for state post-conviction relief. Ray recognized the importance of the Receipt because it was signed by Ms. Smith. All of the other documents Ray offered in support of his claim that he attempted to file his § 974.06 motion before October of 2006 bore only his signature. Ray testified that he had not presented the Receipt earlier

6

because it was not in his possession. One of the inmates who was helping him on his case had it in his possession when the inmate was transferred to another institution. Ray testified that he did not receive it back until later and only found it after the Seventh Circuit remanded his case back to this Court to address the Respondent's defense that the petition was barred by the one-year limitation.

Unfortunately, Ray was unable to offer the Privileged Correspondence Receipt into evidence. Ray testified that New Lisbon Correctional Institution (NLCI) prison officials had lost the document when he submitted it to them for copying on April 18, 2010. In support of this allegation, Ray offered the Disbursement Request form authorizing a disbursement of thirty cents from his inmate account to pay for "two copies of a Corrections Corporation of America Privileged Correspondence Receipt form signed by CCA Social Worker Smith regarding me placing my 974.06 motion in her hands April 27, 2004." (Ex. 6.) The Disbursement Request form is signed by NLCI Correctional Officer Nedbal. Ray also offered the Photocopy Request form in which he requested that the two copies of the "CCA Mail Form Receipt" be sent to him through the institutional mail. (Ex. 7.) A notation on the Photocopy Request form indicates the requested copies were made on April 19, 2010, but Ray testified that he never received either the copies or his original CCA Privileged Correspondence Receipt. Ray testified that he submitted several interview/request forms to various staff requesting their assistance in locating the missing form, but despite an apparently diligent investigation, they were unable to locate it. (Exs. 8, 9, 11, 12, 13.) Nevertheless, Ray argues that the Disbursement Request form signed by Officer Nedbal and other documentation detailing the prison's investigation into its disappearance demonstrate that the CCA

form signed by Smith did in fact exist and further supports his claim that he did hand his motion for state post-conviction relief to her on April 27, 2004.

Ray argues that this evidence is more than sufficient to demonstrate that his § 2554 petition is timely, particularly since, contrary to the Court's previous ruling on the issue, the Respondent bears the burden of proof on the question of whether the mailbox rule applies. In its Decision Denying Dispositive Motions, the Court held that it was Ray's burden to prove that he handed his motion to prison officials for mailing:

> Since the period of limitations is an affirmative defense, Respondent would normally carry the burden of proof on whether it bars Ray's petition. *Gildon v. Bowen,* 384 F.3d 883, 886 (7th Cir. 2004). The prisoner mailbox rule, however, is an exception to the normal statute of limitations, and thus Ray bears the burden of proving that it applies here. *See Knox v. Cook County Sheriff's Police Dept.*, 866 F.2d 905, 907 (7th Cir. 1988) ("While the statute of limitations is an affirmative defense, the burden of establishing an exception thereto is on plaintiff."). Otherwise, Respondent would be required to prove a negative: that Ray did not deliver his motion to prison officials for mailing within the limitations period.

(Doc. 56 at 10-11.) Ray challenges this ruling, citing several cases that hold that once a prisoner files a sworn affidavit or declaration in which he states that he placed the required pleading or notice in the hands of prison officials postage prepaid and addressed to the proper clerk or court, "the burden of producing evidence in support of a contrary factual finding" shifts to the opposing party. *Caldwell v. Amend*, 30 F.3d 1199, 1203 (9th Cir. 1994); *Allen v. Culliver*, 471 F.3d at 1198 ("With respect to any such inquiry on remand, we construe both Houston and Fed. R. App. P. 4(c) to imply that the burden of proof should be placed upon the state if Allen has satisfied the requirement of Fed. R. App. P. 4(c)(1)."); *see also Parker v. Evans*, 350 Fed. Appx. 77, 79 (7th Cir. 2009) ("The information Parker provided is sufficient to satisfy the mailbox rule and allow for a timely appeal. He swore in his declaration "upon oath as true" that he placed the notice of appeal in a sealed

8

envelope with "prepaid postage" on or before May 14. Parker's trust fund transaction report, which shows that the next day the prison debited his account for "legal postage" in an amount equal to first-class postage, corroborates his assertion. We conclude that Parker abided by Rule 4(c)(1) and should receive its benefit, rendering this appeal timely."). Having submitted a declaration attesting to the facts needed to invoke the mailbox rule, Ray argues that the burden of proof is on the Respondent to come forward with evidence, such as prison mail logs or the testimony of prison officials with actual knowledge of the facts, to refute his evidence. Because the Respondent has failed to offer such evidence here, Ray argues that the Court must find in his favor.[3]

The Court does not read the cited cases to stand for the proposition that the respondent initially carries the burden of proof on the question whether the mailbox rule applies. Indeed, each of the cited cases, as well as the codification of the mailbox rule in Fed. R. App. P. 4(c), place on the prisoner claiming the benefit of the rule the initial burden of presenting a sworn declaration setting forth the requirement of having handing the prison official the document to be filed with postage prepaid. On the other hand, Ray is correct that once the prisoner presents such evidence, as Ray has here, the burden does shift to the respondent to refute it. This is in recognition of the difficulty prisoners have in documenting actions they take other than by their own word. *See*

---

[3]Ray suggests that Respondent's failure to obtain and introduce into evidence a copy of the mail log from Diamondback leaves his account undisputed and requires a finding in his favor regardless of whether the Court finds his account credible. But if Ms. Smith failed to deliver his motion to the mailroom, as Ray's argument suggests, the mail log would tell us nothing. It certainly would have been helpful to have Ms. Smith testify about what, if anything she recalls. More likely, she or some else from Diamondback could have explained the procedure and forms used for outgoing legal mail, but counsel for Respondent claims she was unable to obtain such information or locate such a witness. If Ray was still pro se, Respondent's failure to produce such evidence might be viewed differently, but Ray has been represented by a reputable Chicago law firm since December 4, 2008. Such evidence, if it exists, should have been equally available to Ray's attorney.

*Houston*, 487 U.S. at 275-76 (prisons "have well-developed procedures for recording the date and time at which they receive papers for mailing and ... can readily dispute a prisoner's assertions that he delivered a paper on a different date ... the prison will be the only party with access to at least some of the evidence needed to resolve such questions."). But a finding that the filing is timely is not mandated where the state fails to respond with a prison log or testimony of a prison official specifically disputing the prisoner's declaration. As the Eleventh Circuit noted in *Allen*,

> the district court may inquire further as to the actual facts concerning whether or not, and when, a notice of appeal was delivered to the prison authorities. The district court may take into account any and all relevant circumstances, including any lack of diligence on the part of Allen in following up in a manner that would be expected of a reasonable person in his circumstances, in deciding whether the notice was delivered to the prison authorities.

471 F.3d at 1198. Although the Court went on to emphasize that the burden was on the state once Allen satisfied the requirements of Fed. R. App. P. 4(c)(1), it is clear from the Court's discussion of the issue that the prisoner's declaration was not to be considered conclusive even where specific evidence directly contradicting the prisoner was not available.

Taking into consideration all of the surrounding facts and circumstances of this case, the Court does not find Ray's testimony that he handed his § 974.06 motion to Ms. Smith on April 27, 2004, credible. At the outset, one wonders why Ray would ask her to mail an important motion to Wisconsin from Oklahoma when he knew he was on his way back to Wisconsin in a matter of days. But even aside from that, if Ray had given her the motion for post-conviction relief for mailing on April 27, 2004, he would not have waited until October 4, 2006, to ask the clerk of the court to which the motion was supposed to have been mailed about the status of his motion. At the very least, he would have had to contact the court to let it know of the facility to which he had been

transferred. How else would the court know where to send its decision. Even aside from this problem, however, Ray's testimony that he did not ask the court about the status because he had been told by other inmates that courts get irritated when prisoners contact them does not explain why he waited two-and-a-half years to contact the clerk of the court, especially in light of the fact that his letters to Ms. Smith for confirmation that she mailed his motion went unanswered. If Ray was so concerned about the status of his motion that he first wrote Smith only a month after he gave her the motion for mailing, it is not credible that he would have taken no action other than to send her two nearly identical letters over the next year, both of which also received no response, and then wait another fifteen months before he finally wrote to the clerk of the court in which the motion was supposed to have been filed asking about its status.

Under the approach adapted by the Ninth Circuit in *Huizar v. Carey*, Ray's habeas petition would be found untimely on this evidence alone. Ray would not be entitled to the benefit of the mailbox rule even if he did hand his motion to Ms. Smith on April 27, 2004, because he did not diligently follow up with the court when he "failed to receive a disposition from the court after a reasonable period of time." 273 F.3d 223. The Ninth Circuit's approach is not unreasonable. The Supreme Court fashioned the mailbox rule to address the unique difficulties *pro se* prisoners face in insuring that required documents are filed within statutory deadlines. Unlike people on the outside, the Court noted that prisoners are forced to ask prison officials to place their documents in the mail and they can not immediately follow-up by calling the clerk to see if the document was received. *Houston*, 487 U.S. at 270-71. But even prisoners can write to the court in order to confirm that their intended filing has been received. They should certainly take such action before almost two-and-a-half years have passed without word from the court. Moreover, as Judge

Stadtmueller observed in *Johnson*, absent a requirement of reasonable diligence on the part of the prisoner, "there could be hundreds of cases technically filed with the court at any given time, yet the court would have absolutely no knowledge of such cases. Further, the lack of a diligence requirement means that these cases could be pending for years, so long as at some point in time a prisoner was able to show that however many years earlier he had timely 'filed' (i.e., delivered to prison officials) his document." 2010 WL 2490694 at *2. Absent the benefit of the mailbox rule, Ray's petition is clearly barred.

The Court would reach the same result under the approach utilized by the Eleventh Circuit in *Allen v. Culliver*. Using that approach, the Court may consider Ray's lack of diligence in deciding whether his claim that he actually delivered the motion to prison authorities is credible. 471 F.3d 1198; *see also Stoot v. Cain*, 570 F.3d 669, 672 (5th Cir. 2009) ("A failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent."). As already noted, this Court finds Ray's claim that he gave his motion to Ms. Smith for filing on April 27, 2004, incredible in light of the fact that he did not contact the clerk to check on its status until two-and-a-half years later. But it is not only Ray's lack of diligence in following up with the clerk earlier that causes this Court to reject his version of events. Inconsistencies in his own documentation and further implausibilities concerning that documentation also cause the Court to question Ray's version of events.

For example, Ray offers the three letters he claims he sent to Ms. Smith in an effort to confirm that she had mailed his motion to the state court as he had requested. (Exs. 2, 3, 4.) Ray claims these are copies of letters that he actually sent to Ms. Smith on the dates shown, but there is no way to tell from the appearance of the letters whether that is the case. It is somewhat curious

12

that he retained a copy of a letter he sent only a month after he handed Smith his motion for post-conviction relief, but did not retain a copy of the motion itself. It is also curious that he swore in his initial affidavit filed with his § 2254 petition, in which he requested equitable tolling of the one-year limitation, that he also wrote Diamondback regarding his lost property on the same three dates that appear on his letters to Ms. Smith. (Doc. 4, ¶¶ 4, 5, 7, 9.) When asked about his earlier affidavit, Ray explained that he had two or three boxes of legal work that prison officials misplaced when he was transferred back to Wisconsin. The legal materials were later returned to him, but Ray testified that he had written three separate letters to Diamondback regarding the property that apparently bore the same dates as his three letters to Ms. Smith. He could not recall whether he retained copies of those letters. Ray also mentioned in his affidavit that he forwarded correspondence to Social Worker Smith seeking answers as to what happened to his § 974.06 motion, but he references only one letter, not three, and states that it was "forwarded back to Ray as a return to sender." (Doc. 4, ¶ 14.) He did not mention his letter to Ms. Smith being returned to him in his testimony and, of course, if it was returned as he said in his affidavit, it makes his continued writing to Ms. Smith and delay in writing the clerk all the more unreasonable.

The Court also doubts the authenticity of "Certificate Of Service By Mail" form, which Ray claims Ms. Smith gave him to fill out. The certificate bears no signatures, other than Ray's, and appears on plain white paper with no heading or other indication that it is an official prison form. (Ex. 1.) It contains no space for the year of service, and contains numerous typographical errors. Even when compared with the official property request form from Ray's file (Ex. 21), which also lacks an institutional heading and contains a grammatical error, the Court remains convinced that

13

in both form and content the certificate looks more like the work product of a prisoner than a prison administration.

In addition, the Court doubts that Ray ever had a "Privileged Correspondence Receipt" signed by Ms. Smith. There is no mention of the Receipt by Ray or in any of his documentation until April 18, 2010, when he asked to have it photocopied, despite the fact that it is the only document he had to substantiate his claim that he handed his motion to Ms. Smith for mailing that allegedly bore her signature. Ray specifically referenced the "Certificate of Service by Mail" in his first letter to Smith dated June 1, 2004, which he incorrectly stated she had filled out. (Ex. 2.) He also emphasized the "Certificate of Service" in his "Motion For Protective Order Staying And Abeying [sic] Petitioner's Petition For Writ Of Habeas Corpus Filed Pursuant To 28 U.S.C. § 2254" that he filed with his petition in this Court on February 28, 2007, noting in bold that he had attached a copy of the certificate to his motion and stating, again incorrectly, that it was signed by Ms. Smith. (Doc. 3 at 3.) He attached copies of the three letters he claims he had sent Ms. Smith asking her to confirm she had mailed his motion to the state court as he had requested. Yet, he failed to even reference the one document which supposedly corroborated his account that bore someone's signature other than his own.

Ray's explanation for his failure to mention the "Privileged Correspondence Receipt" form earlier is inconsistent and not plausible. He testified that another inmate who was helping him with his motion had it in his possession when he was transferred to a different institution, and it wasn't until later (he's not sure when) that it was returned to him. Overall, Ray's explanation is that he did not understand the law governing federal habeas corpus at the time and did not appreciate the significance of the document. But this is an inmate who had two or three boxes of legal materials

14

when he was at Diamondback, and his initial filing in this Court, coming less than six months after he claims he first became aware that his original § 974.06 motion was not filed in state court, demonstrates detailed knowledge of not only the one-year limitation period for federal habeas petitions, but also the mailbox rule and the rules governing tolling of the one-year period. (Doc. 3, 4.) The fact that he noted in bold in a motion filed contemporaneously with his petition that the "Certificate of Service" was signed by "Tamara Smith, Social Worker for Diamondback Correctional Facility" shows that he knew the importance of a document signed by someone on the prison staff. And even if one accepts his testimony that he allowed one of his inmate helpers who was later transferred to a different institution to retain possession of such a crucial document, nothing prevented him from at least mentioning it in one of his previous filings. It is also noteworthy that the CCA Corporate and Facility Policy governing Diamondback does not mention either a "Privileged Correspondence Receipt" form or a "Certificate of Service By Mail" form, but it does specify the form to be used when privileged correspondence is distributed to an inmate. (Ex. 1001, ¶ 16-1.5(C)(2)(d) ("A staff member will distribute privileged correspondence to inmates using form 16-1D.")).

Finally, the Court finds Ray's evidence that the NLCI personnel lost his Privileged Correspondence Receipt form unconvincing. Based on the testimony presented, it is clear that the document Ray handed CO Nedbal for photocopying could have been a document he created in an attempt to manufacture additional evidence to corroborate his claim that he handed his § 974.06 motion to Ms. Smith on April 27, 2004. The detail in which Ray described the document in the Disbursement Request form (Ex. 6) suggests a purpose beyond a simple request for a thirty-cent disbursement for photocopying. Although the NLCI policy for photocopying required the inmate

15

to complete the Photocopy Request forms "with detailed instructions as to what is to be copied, including the number of copies" (Ex.15, ¶ 1 A. 2), the testimony of Lynn Martin, the librarian, indicates that the detail required concerned the directions for copying, i.e., number of copies, one or two sided, legal or letter size – not the document to be copied. Library personnel were not expected to determine the authenticity of the documents submitted for copying. They screened the material for appropriateness and to insure it did not relate to a different inmate. In fact, Officer Nedbal testified that Correctional Officers were not allowed to read legal materials that inmates submitted for copying, and that he would look mainly to insure the name of the inmate who was submitting the document appeared on it. His signature on the Disbursement Request form and acceptance of the document for copying, under the circumstances, cannot be reasonably viewed as proof of what the document was. Having worked in the library himself, Ray would have known as much.

The documents generated in response to Ray's report that he never received the requested copies and that his Privileged Correspondence Receipt was not returned also fall short of substantiating his claim. The responses of the various prison officials demonstrate that they treated Ray's claim that a document crucial to his case had been lost at face value and conducted a thorough investigation in an attempt to find it. According to the report of the Education Director David Hines, "the librarian and the library officer who recalled your copies and stated they were placed into the 'Institution Mailbag' for delivery to you on the housing floor." (Ex. 14.) Director Hines followed up with various departments in an effort to locate the missing documents, but could not locate them and concluded that they were lost. The conclusion that the documents were lost, however, was based solely on Ray's claim that he had not received them. Ray, of course, could

16

have been lying. He could have received whatever document he submitted along with the copies he requested through the institutional mail as he had requested, but then denied having received them so that he could claim they were lost and thereby avoid having the document scrutinized. There was no tracking system in the institution that was used to document the return of material that inmates asked to have photocopied apparently because the loss of photocopied material had not previously been a problem. Both Officer Nedbal and Lynn Martin, the librarian, testified that they could not recall a previous instance where a document or copies were lost.

Given the investigation conducted by Director Hines, Ray testified that had someone delivered the Receipt and copies to him in his cell, they would have spoken up when a search was mounted to locate them. But that assumes whoever delivered them knew of the investigation and recalled having delivered the documents Ray claimed were lost at the time Hines was conducting his investigation. Hines' report was issued on May 6, 2010, two-and-a-half weeks after the copies were made and placed in the institution mailbag for return to Ray. Given the amount of litigation conducted by prisoners, it is unlikely that a guard would retain a specific recollection of what he delivered and when. Moreover, at the time, no one apparently had any reason to believe Ray had a motive to fabricate a story about the documents being lost. For these reasons, the Court does not find Ray's evidence relating to the Privileged Correspondence Receipt sufficient to overcome the weight of all the other facts and circumstances of the case.

In sum, the Court concludes that Ray's version of the events concerning the filing of his state motion for post-conviction relief is not credible. The Court therefore finds that Ray did not hand his motion to Ms. Smith on April 27, 2004, with a request that she mail it to the state court as he claims, and that the limitation period for filing § 2254 motions was not tolled. It follows that Ray

17

failed to file his motion within one year after his state court conviction became final. Accordingly, his petition is barred and the action must be dismissed. The Clerk is directed to enter judgment dismissing the action on the ground that the petition was not filed within the time allowed under 28 U.S.C. § 2244(d)(1).

**SO ORDERED** this   23rd   day of August, 2011.

 s/ William C. Griesbach  
William C. Griesbach  
United States District Judge